The last case of the day is case number 4-16-0082. In re. Jay. U. Appearing for the appellant is attorney Roland Cross for the appellee is attorney David Manchin. Mr. Cross, are you ready to proceed? You may. Justices, Mr. Manchin may it please the court.  She is appealing a January 7, 2016, order from Sangman County terminating her parental rights. I raised in my brief three issues on appeal. I asked for the oral argument primarily just to deal with one of the three arguments because I just wanted to make sure I was clear in the briefing. I wanted to address with you, certainly you can ask any questions, but I'm going to deal with just the best interests hearing and the testimony and guardian ad litem recommendation. In a best interest hearing, the state has the burden of proving that it's in the best interest of the child or children to terminate parental rights of the parent. And your standard of review is to weigh the evidence, essentially that no one could come up with a different conclusion than the trial court. In this case, the state called one witness in the best interest section, just one witness and that's the caseworker. In that testimony of the caseworker, the caseworker testified about the close bond between the child and the biological mother. This is a child who has autism and the caseworker testified that he really only saw the child have a close, physical, hugging, responsive reaction to two people in his time, the foster parent who was also the grandmother and to the biological mother. The caseworker also testified that there would be some harm to the child if the relationship between the mother and the child was cut off and that he did not know if the foster parent grandma would allow visitation between the mother and the child if the rights were terminated. These were unknowns. After that testimony, again, uncontradicted, it was the only witness, there was argument in the guardian ad litem. You keep on mentioning it's the only witness. It's not as if the court isn't able to or shouldn't consider all the evidence that was presented. Isn't that the case? I don't disagree. That's correct. But on the issue of best interest, I guess I need to say, perhaps I didn't say it clearly, the state provided the single witness. The guardian ad litem issued a number of concerns, but in light of the testimony of the caseworker, the guardian ad litem act, I can't agree that this is in the best interest of the child. I can't agree that cutting this autistic child off from his mother is something I can agree to. If we knew, if there could be a guardianship, if there was some way I could be reassured that the child would have self-contact with the mother, that may be a different issue. Of course, the mother's attorney argued that this harm was... So what should have happened? What should the trial court have said? That you're arguing we should reverse it? That we should reverse it? Yeah, you're arguing we should reverse it, and what is your alternative finding that the trial court should have made? Well, I think in this case, I think I would remand it and ask the trial court to investigate that issue. Investigate what issue? To whether or not the foster parent adoptive placement would allow continuing relationship with... Why should it matter? Because if we're considering the best interest of the child, the child's autistic, the child has essentially bonds with two people, you're removing that one of the two people from that child's life. So if we didn't terminate her parental rights and appoint the new... Is it the grandmother? Yes, the grandmother. The grandmother as the adoptive parent, then your client would continue to be involved in this child's life and to be able to essentially exert parental control over the child, would you not? Oh, I mean, one of the things that guardian ad litem stated was look into a guardianship. I understand Appelli's argument that that's not required. He's right about that, but there are other... Look into a guardianship. This court has written in the past that every child's entitled to a loving, caring, safe, permanent home of his or her own. And that's obviously what the trial judge was... Okay, but you're saying we should reverse, and if we reverse, how are those goals going to be achieved by what you're suggesting would be the course of action? Well, I think because you're looking at the uniqueness of this particular family, where we have an autistic child, a mother who, granted, I think the record is clear, she has some drug issues, has participated in visitation, not only the visitation offered by the service plan, but visitation that was offered outside of the service plan by the foster parent. So this is a mother who has remained in contact regardless of what her issues were. She's also done some other things, too. I mean, she kept employment, she obtained Section 8 housing. I mean, she didn't do nothing. And she kept contact with this child. The only witness we had said the relationship between this child and the mother was important. And this isn't just another child. This is a child who suffers from autism. Is there evidence in the record that establishes that this child would be especially harmed by termination due to his autism? I don't believe there's evidence above the caseworker's testimony that the child would be harmed in the best interest hearing. I don't believe that there is other evidence than that. And there certainly wasn't any evidence presented on the day of the unfitness and best interest hearings that that was it. If you look at the 40513 factors, the testimony by the witness and the GAL's concerns, as well as the mother's attorney, identified four factors of the best interest factors that the decision to terminate would affect. The development of the child's identity, the child's background and ties with his family, the child's sense of attachments, and the uniqueness of every family and child. And I think the last one is the one you need to look at closely because this is a unique child and a unique family. So my request is based on everything in my brief, but especially on the best interest issues. I do think, I do request that you either reverse or remand the case back to the trial court to see, to let the GAL investigate the issue of whether the mother and this child have the ability to continue a relationship with the adoptive placement that the GAL requests. Thank you. Thank you. Mr. Manish. Good afternoon, Your Honors. May it please the Court. Mr. Cross. In this case, the trial court's decision to terminate the parental rights of this particular respondent was proper. It was not contrary to the manifest way to the evidence. The purposes of the Juvenile Court Act and the Adoption Act specifically state that one of the things is to achieve permanency at the earliest possible opportunity. The statutes also have a preference for either returning the child home or adoption, with guardianship being the last resort, only if you cannot terminate and you cannot order, cannot return home and cannot permit to let the child be put up for adoption. The trial court properly went to the adoption of birth rather than exploring the option of guardianship, because guardianship is the last resort. And the trial court made the finding that this was in the best interest of the child, that return home was not possible, which was eminently proven by the evidence at the unfitness hearing where the mom, the only, basically the only thing she did was go to visitation. She didn't deal with the drugs, her drug use. She continued to use drugs. She didn't do the domestic violence classes. She didn't do the individual counseling. She did not keep in contact with the caseworkers on a regular basis. She made employment for a month or so, I believe, if I recall right. And while she got Section 8 housing, there's long periods of time where she had no housing. So the court was faced with an individual that it doesn't look that they'll ever be able to return this child to this individual. So the choice is, do we terminate the parental rights now so that she can have, as Justice Stiglitz said, have the permanent, stable, loving home that she's entitled to? Or do we delay? And I think the trial court reached the correct decision. This whole question of, will Grandma let Mom continue to stay in the child's life? The trial court, and I believe it was M&M, the court said, you cannot order the foster parent to maintain contact with the child. If you cannot order the foster parent to remain in contact, why does the court have to investigate whether the foster parent is going to allow contact? And I think the question of additional further contact is really not a question of, is it in the best interest to terminate? I think it more goes to the question of, all right, at the adoption proceeding that follows the termination, who is the best person to adopt? And if you have two adoptive possible abilities, and one says, yeah, I will definitely let the mom stay in the child's life, and the other says, no, the mom is never going to see the child again, then the court can weigh that in as far as which adoptive parent you're going to give it to. But the decision to make at this point in time doesn't go to that. Is it in the best interest of the child to terminate at this particular time, to give it the stable home it's entitled to? The GAO spoke against termination here, right? It was more of hedging his bets. They didn't really know what to argue. They were concerned because they didn't know what grandma was going to do, whether that was the only basis for the GAO's wavering as to what to do. Well, that probably depended on how mom was doing, right? Yeah, it may well do. Grandma may let the child and mom have contact, depending on just how bad mom is at behaving. And you cannot order her to say you have to let the mom end the child's life. The testimony regarding that the termination could have some kind of harm, the trial court probably gave that little weight. The same witness had just a few sentences before said that there would be no harm to Jay if the parental rights were terminated. Then in cross-examination he says, I don't know if Jay would be harmed if he never saw his mom again, but there might be some kind of harm if he never saw his mom again. That is not a clear statement that, yes, this child will be harmed, and it's going to be tremendous harm if this relationship is terminated. This is a witness who is flip-flopped as to how much harm there is or is not going to be. Because he knows, yeah. So the trial court gave that some kind of harm testimony a little weight, I don't think properly, and that was his decision, how much weight you want to give the GAO's recommendation and how much weight you want to give this some kind of harm in light of the immediately prior testimony that no, this child is not going to be harmed. Counsel has stressed in his brief and again here on appeal that this is an autistic child. The only information we have regarding autism in this record is that the child has autism. We don't know, your honors are probably aware, autism is on a spectrum. You have from the Rain Man type situation in the movie to someone like Bill Gates who is supposed to have a form of autism. He functions pretty well in society. There is that wide spectrum. We don't know where on that spectrum this child falls. We also don't know what termination of parental rights would mean to this particular autistic child because there was absolutely no testimony regarding that, just other than the mere mention of the fact that the child had autism. The state does not deny that there is a bond between the child and the small respondent, and that is not uncommon in these cases. But just because there is a bond between the mother and the respondent and the child does not mean that the trial court was wrong in its determination that we need to terminate the parental rights so that this child can have the permanency and stable home that he's entitled to. Are there no further questions? I don't see any. Thank you. Thank you, your honors. Mr. Cross, rebuttal? Yes, Mr. President. During this case there were three service plans, and during the three service plans the mom cooperated with the random drops. She did not successfully complete the random drops, but she cooperated with them. She successfully completed parenting classes. She maintained housing and she maintained employment. So she did. She did do other things. There's no requirement as I know it that there needs to be a tremendous bond, but there is, and there was testimony. There needs to be a what? A tremendous bond. Mr. Manchin suggested that there was no evidence about a tremendous bond. Tremendous bond? Sorry, I have a cold and I don't know what's coming through. Yeah, so there was no testimony about a tremendous bond. He's right about that. The witness did say there were two people that this child identified with and openly outwardly showed affection for, his grandmother and his mother. And when he was asked then is there going to be harm if he never sees his mom again, the witness said there would be some kind of harm. Is there any indication from your involvement in the case that if mom achieves cleanliness in the drug sense that her mother wouldn't permit contact between the child and the mother? Is there evidence that she would not? No, there is not. And that's why I think the GAL said just let me look into this issue. Just let me look into this issue and then you may, you know, judge you may have my blessing, but let me look into this issue. But there was no evidence that said that or that would suggest that. There was just the one witness. The one witness said the child would be harmed if he broke his bond completely. And I think if you look at four of the factors to be considered that this is true. Is there any evidence in the record of animosity between the grandmother and the mother? Not in the trial program, no. There's nothing, no evidence really of any kind of what the relationship was. And again, I think that's why the GAL, Sarman, requested that issue. You know, this is why I think this case is like in RAE-MF. And I know the appellee distinguished, Mr. Manchin, distinguished that case. But in that case we had a mom with a mental illness. And I would akin that to the drug issue here. And there was no suggestion that this mental illness was going to be helped soon. But the mother had a tight bond with the kids. And that was enough for the court to say that we can't say it's an unfit. Yes, she's unfit. The mental illness is going to prohibit her from being a mother. But is that enough to overcome the best interest standards? The court said no, it wasn't enough. That the mom had a close bond with the kids. She participated in the visitation. And the children benefited from it. And I think this is why this case is like in RAE-MF. Thank you. All right, thank you. Thank you both. The case will be taken under advisement and a written decision shall issue. The court stands in recess.